# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| NATHANIEL D. MILLER, | ) |
| | ) |
| Plaintiff, | ) Case No.: 1:08-CV-118 |
| v. | ) |
| | ) |
| CHARLES G. HART, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

This case began on May 6, 2008, when the *pro se* Plaintiff, Nathaniel D. Miller filed his Complaint brought under 42 U.S.C. § 1983 against Charles G. Hart alleging that he "was denied medical attention from July 17th 2007 until October 10th 2007." (Compl. at 3.) In particular, Miller alleges that he alerted unnamed jail staff members in July, 2007, that he had an impacted, decayed and infected lower molar and that because his treatment was delayed, he "experienced several months of excruciating pain without any pain medication."(Compl. at 3.)

On September 2, 2008, the Court reviewed Miller's Complaint under 28 U.S.C. § 1915A(a) and allowed him to proceed on his claim under the Fourteenth Amendment that Hart, as the Jail Commander, was deliberately indifferent to his serious dental needs. (Docket # 8).

The Court noted, however, that Hart was probably not personally involved in Miller's medical treatment, even as a supervisor, but that the case would nevertheless proceed so Miller could conduct some discovery to identify and substitute as defendants those lower ranking officials who were personally involved. (*Id.*)

Thereafter, a scheduling conference was held on December 16, 2008. March 1, 2009,

was established as the deadline for Miller to amend his pleadings or to add any parties, and the Court also set July 1, 2009, as the last date for the completion of all discovery. (Docket # 16.) Although Miller conducted some discovery, he never filed a motion to amend his Complaint.[1]

Ultimately, Hart filed a motion for summary judgment (Docket # 26), which Miller opposes. As will be explained, Hart's motion for summary judgment will be GRANTED.

---

[1] In his response brief, and as an apparent afterthought, Miller offers a one sentence request to add 6 more defendants to his lawsuit. (Pl.'s Resp. Br. ¶ 2.) One problem with this request, however, is that the Rule governing such motions, Fed. R. Civ. P. 15, must be read in conjunction with the requirements of Rule 16, because "[o]nce the district court [has] filed a pretrial scheduling order pursuant to [Rule] 16 which establish[es] a time table for amending pleadings that rule's standards [control]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Tschantz v. McCann*, 160 F.R.D. 568, 570-71 (N.D. Ind. 1995). In fact, the Court entered such an order under Rule 16(b) nearly a year ago, on December 16, 2008, establishing March 1, 2009, as the deadline for Miller to amend his pleadings. Thus, Miller must first show "good cause" for the lateness of the purported amendment under Rule 16(b); then, if good cause is shown, he must demonstrate that the amendment is proper under Rule 15. *Tschantz*, 160 F.R.D. at 571. Here, of course, Miller offers no suggestion of good cause, as there is no showing that he was diligent in pursuing this relief. *Id.* (quoting *Johnson*, 975 F.2d at 609). The omission is fatal.

Moreover, in the unlikely event that some diligence could be shown (now some 8 months beyond the deadline) there is also no indication that any of these individuals, except perhaps Pamela Thornton, had any personal involvement in the alleged deprivation. And to the extent he desires to add the Sheriff (presumably in his official capacity), that claim will be discussed later in connection with the official capacity claim against Hart.

Finally, as Hart notes, Indiana's two-year statute of limitations for personal injuries has run for actions brought under § 1983. *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir.2000) (applying two-year statute of limitations from Indiana Code § 34-11-2-4 to the plaintiff's § 1983 claim). Therefore, Miller can only name new defendants if, under Fed. R. Civ. P. 15(c)(1)(C), the amendment relates back to the date of Miller's original complaint. Relation back, however, is limited and does not apply "when the reason the original complaint is insufficient is a simple lack of knowledge of the identity of the proper party." *Eison v. McCoy*, 146 F.3d 468, 472 (7th Cir.1998). Given the court's admonition in its September 2, 2008, Opinion and Order, that Hart likely had no involvement and that Miller would need to add other jail personnel to his case, it appears that Miller did not know at the time the proper parties to sue, making the relation back rule inapplicable.

In short, Miller's proposal that he be given an opportunity to name some additional defendants so he can start over is not only untimely, but plagued by inexplicable and undue delay, and ultimately futile given the time-barred nature of his claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

After some months in the Allen County Jail as a pretrial detainee, Miller submitted a medical request form on July 17, 2007, complaining of a "Tooth Ache Lower Left impacted decayed infected." (Aff. of Pamela Sue Thornton, ¶ 6.) He was placed on sick call the next day, July 18, 2007, and by July 19, 2007, he was examined by a Physician's Assistant, who noted an impacted left wisdom tooth, but without tenderness or swelling. (*Id*. ¶¶ 6-7.) As a result, Miller was placed on the dental list, and was advised to ask the jail guards for ibuprofen or other forms of non-aspirin as necessary. (*Id*. ¶ 7.)

On July 27, 2007, Miller submitted another medical request form stating "Tooth Ache." (*Id*. ¶ 9.) Again he was told to get ibuprofen from the jail guards, and was reminded that he was on the dental list. (*Id*.) On August 3, 2007, Miller submitted a medical request form stating, "Tooth Ache lots of pain needs removed impacted wisdom tooth swollen. Could not get an Ibuprophen [sic] from 3rd shift." (*Id*. ¶ 10.) He was advised that he was on the dentist list for Monday, August 6, 2007. (*Id*.)

On August 6, 2007, a local dentist, Wayne D. Walker, examined Miller and ordered eight days of penicillin followed by extraction of the wisdom tooth. (*Id*. ¶ 11.)

Unfortunately, and through an apparent administrative error, the jail medical staff failed to issue a Medical Transport Request (utilized to get inmates to off-site medical appointments), so Miller's tooth remained untreated. (*Id*. ¶ 12.)

On August 22, 2007, Plaintiff submitted another medical request form stating "Tooth

---

[2] The facts are viewed in a light most favorable to Miller as the non-moving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Ache Lower Left impacted." (*Id*. ¶ 13.) Once again, Miller was scheduled for sick call, but apparently refused to go, opting instead to submit another medical request stating "I made request to see the dentist 7-17-2007 I was seen by the nurse and the dentist given a prescription charged a total of $40.00 put on a list to see the dentist?" (Aff. of P. Thornton ¶¶ 13-14.) In response, he was informed "You are scheduled to go out as are many . . . you will be called when it is your turn."

Miller's chart indicates no further activity until September 9, 2007, when he submitted a request form stating "I have been suffering from an impacted wisdom tooth since July 17th 2007. Infected again. It is swollen and painful this is cruel and unusual punishment. A violation of my 8th Amendment Rights." (*Id*. ¶ 15.) In response, Miller was told "if you don't care to wait for our dentist give us the name of your dentist" but such a visit would be at Miller's expense. (*Id*.)

This response caused Miller to finally write two inmate request forms to Hart, one on September 11 and another on September 14, 2007. (Aff. of Charles G. Hart ¶ 9.) Apparently Miller took this course because the jail has signs posted indicating that Commander Hart is responsible for the administration of the jail and the jail has no grievance procedure. (Miller Aff. ¶¶ 7-8.) But because Miller's complaints had to do with his medical treatment, Hart apparently forwarded them to Thornton in her capacity as Director of Health Services for the Allen County Jail. (*Id*. ¶ 8.)

On September 17, 2007, after reviewing the forwarded forms, Thornton reviewed Miller's chart and discovered that no Medical Transport Request had been issued by her staff so he could be taken to the dentist for the tooth extraction. (Aff. of P. Thornton, ¶¶ 17-18.) She

4

then responded to Miller's request and indicated that he would be scheduled. (*Id*.)

That same day, she completed a Medical Transfer Request for Miller to be taken to Dr. Walker. (*Id*. ¶ 19.) On October 4, 2007, Miller was transported to Dr. Walker's office, and the tooth was extracted. (*Id*. ¶ 20.) The dentist prescribed an ice pack and vicodin, and those were administered until October 10, 2007. (*Id*.)

On October 9, 2007, however, Miller submitted a medical request stating "Infected Lower Jaw- Swollen and very painful I need medical attention ASAP." (*Id*. ¶ 21.) Miller was told he would be seen by a doctor as soon as possible. (*Id*.)

The next day, Miller was examined by the jail's Physician's Assistant, and given penicillin and vicodin, closing the chapter concerning Miller's dental care. (*Id*. ¶ 22.)

In the present motion, Hart argues that there is no evidence that he was deliberately indifferent to Miller's medical needs, and that throughout, he merely (and reasonably) relied on the Jail's medical staff, and that ultimately, Miller cannot show that his (Hart's) actions or inaction, caused him any harm.

In response, Miller argues that Hart did not take reasonable measures to prevent the violation because there is no procedure for routing inmate medical requests directly to him. Stated another way, Miller argues that the Jail's policy of automatically forwarding to the medical staff any inmate request forms sent to Hart describing serious medical needs caused the alleged Constitutional violation and gives rise to an official capacity claim. Finally, Miller argues that Hart is either personally liable as a supervisor for the violation, or his failure to train jail staff gives rise to an official capacity claim.

## III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder." *Id*. The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id*. However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id*. at 771. In that regard, "the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file." N.D. Ind. L.R. 56.1(b); *see also Bradley v. Work*, 154 F.3d 704, 707-08 (7th Cir. 1998); *Waldridge*, 24 F.3d at 922 (collecting cases in which the Seventh Circuit Court of Appeals has "upheld the strict enforcement of [Local Rule 56.1]").

## IV. DISCUSSION

In this § 1983 action, Miller must show that Hart violated one or more of his constitutionally protected rights while acting under the color of state law. *Lewis v. Downey*, 581 F.3d 467, 472-73 (7th Cir. 2009). Since it is undisputed that Hart was acting under state law, the Court will focus on whether Miller can show that Hart, either personally, or in his official capacity, deprived him of a Constitutional right.

### A. Hart is Not Liable in His Individual Capacity

Although he invokes the Eighth Amendment, it appears that Miller was a pre-trial detainee, so his claim is actually governed by the due process clause of the Fourteenth Amendment. The distinction is, however, immaterial since the standards are effectively identical. *See Whiting v. Marathon County Sheriff's Department*, 382 F.3d 700, 703 (7th Cir.2004); *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir.2003) ("The eighth amendment does not apply to pretrial detainees, but as a pretrial detainee, [plaintiff] was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment."); *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 517 (7th Cir.2002) (same).

In that regard, the "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal quotations omitted).

The Eighth Amendment inquiry has both subjective and objective elements. *Smith v. Neathery*, No. 1:06-cv-986, 2009 WL 1941352 (S.D. Ind., July 2, 2009). A prison official does

not act with deliberate indifference unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*., at *4 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). To show deliberate indifference, a prison official must act "recklessly," which means the person "must consciously disregard a substantial risk of serious harm." *Id*. (*citing Farmer*, 511 U.S. at 839 (internal quotations omitted)). A plaintiff does not need to prove that a defendant intended harm or that he actually believed harm would result; it is enough to show that the defendant "actually knew of a substantial risk." *Id*. (*quoting Haley v. Gross*, 86 F.3d 630, 641 (7th Cir.1996)).

Based on the record before the Court, the first date that Hart even became aware of Miller's need for dental treatment was on or about September 11, 2007, when Miller's first inmate request form was submitted to him. This form was soon followed by another one on September 14, 2007; both forms complaining of a lack of dental care and the need for immediate medical attention. (Hart Aff. ¶¶ 3-4.)

Miller is just one of many inmates in the jail from whom Hart receives written requests (Hart Aff ¶ 6), so he did not personally communicate with him, but he did promptly forward the inmate requests to Thornton, the jail's Director of Health Services, who immediately recognized the administrative error and promptly scheduled Miller's medical transport to the dentist.

On this record, Miller's claim falls well short of giving rise to even an inference that Hart was deliberately indifferent to his medical needs. After all, deliberate indifference is comparable to criminal recklessness, *Hunt v. Miller*, No. 2:07-cv-287, 2009 WL 1657548, at *5 (N.D. Ind.

8

June 9, 2009) (*citing Farmer*, 511 U.S. at 837), which means that a plaintiff must demonstrate more than an inadvertent failure to provide medical care or negligence in treating a medical condition. *Id.* (*citing Estelle*, 429 U.S. at 105-107); *See also Billman v. Indiana Department of Correction*, 56 F.3d 785 (7th Cir.1995).

Instead, Miller must show "something approaching a total unconcern for [his] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Id.* (*quoting Duane v. Lane*, 959 F.2d 673, 677 (7th Cir.1992); *citing McGill v. Duckworth*, 944 F.2d 344 (7th Cir.1991)). In short, Hart must have known of and disregarded an "excessive risk" to the inmate's health or safety. *Id.* (*citing Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir.1994); *quoting Farmer*, 511 U.S. at 837-838.) Therefore, even when the evidence is construed in a light most favorable to Miller, there is nothing by which a reasonable jury could even infer that Hart was personally involved with Miller's medical treatment, let alone that he acted in any way approaching deliberate indifference. Consequently, Hart is entitled to summary judgment on this claim.

### B. Hart Cannot Be Held Liable as a Supervisor

Miller nevertheless maintains that Hart must be liable because he is the ultimate supervisor of all jail operations. The Court, however, previously spoke to Miller concerning this legal proposition in its September 2, 2008, Opinion and Order:

> As jail commander, [] Hart presumptively was not involved in [] Miller's medical treatment at the jail. *See Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir.1981) (prison superintendent not personally involved in day-to-day operation of the institutional hospital, and not responsible for treatment decisions). Supervisory liability will be found only if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. That is, to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. The

supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir.2001) (citations and quotation marks omitted).

Given this standard, it is quite apparent that the record does not support even an inference of supervisory liability. For instance, there is no showing, and in fact, no contention, that Hart (at least before September 11, 2007) was in any way involved in Miller's medical treatment. Thereafter, as the record shows, once Miller's situation became known to Hart, he promptly brought it to the attention of jail medical authorities and the situation was resolved.

Even more to the point, the record does not suggest that Hart did anything to facilitate the continued failure to provide dental care to Miller, or that he turned a "blind eye" to Miller's inmate request form. *Cf.*, *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-29 (7th Cir. 2004) (holding that where supervisors of a jail medical facility knew of their employees' disregard for written policies and yet did nothing to ensure that they followed those procedures, a reasonable jury could find that the actual practice of repeatedly failing to follow proper procedures caused its employees to be deliberately indifferent to the inmate's serious health needs). Accordingly, without evidence to support this claim, there is no basis to ascribe any sort of supervisory liability to Hart as a matter of law.

*C. The Official Capacity Claims Against Hart Fail as a Matter of Law*

Having disposed of Miller's claims against Hart in his individual capacity, the Court turns to his official capacity claim against Hart as a policy-maker.[3] Miller's first argument in support of municipal liability is that the Allen County Jail has a policy, as described by Hart

---

[3] Hart apparently concedes that he is a policy-maker within the jail. (Def.'s Reply Br. 2.)

(Hart Aff. ¶ 8), of automatically forwarding to the medical staff any inmate request forms sent to him that describe serious medical needs, and that this caused the unconstitutional delay in his dental treatment.

Like supervisors, municipalities are not vicariously liable for constitutional violations under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Rather, a plaintiff must show that a municipal policy or custom was the "moving force" behind the constitutional violation. *Monell,* 436 U.S. at 694. Miller's claim, however, essentially is grounded in the belief that the jail's policy of redirecting inmate medical requests to the jail's nurses, so they can evaluate the need for medical intervention in the first instance, caused his alleged deprivation. Policies such as this, however, have previously been upheld. *Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir.2004) (finding that it is not unconstitutional for municipalities and their employees to rely on the medical judgments made by medical professionals, including nurses, responsible for prisoner care).

Indeed, the policy seems to make good sense, in that it "allow[s] prisoners to receive prompt health care from on-site doctors or nurses, [and] also ensures that an independent party, rather than a corrections officer, makes the critical decisions about whether and at what point a prisoner's medical needs are sufficiently severe that ambulatory care or hospitalization is warranted." (*Id.*) Indeed, if Miller was deprived of dental care, it "resulted from factors other than a faulty [jail policy]." *City of Canton v. Harris*, 489 U.S. 378, 390-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (citations omitted).

This brings the Court to Miller's conclusory assertion that the deprivation he suffered arose from Hart's failure to train jail staff concerning a critical feature of their work; that is,

11

providing or arranging for medical care for the inmates.

Failure to train is a species of deliberate indifference. *Est. of Rice ex. rel. Rice v Corr. Med. Svcs.*, No. 3:06-cv-697, 2009 WL 1748059, at *17 (N.D. Ind. June 17, 2009) (*citing Erwin v. County of Manitowoc*, 872 F.2d 1292, 1297-1298 (7th Cir.1989)). As this Court has previously noted, "liability may attach 'if persuasive evidence is presented of a training policy or custom, or lack thereof, which reflects a showing of deliberate indifference on the part of a municipality to the constitutional rights of its inhabitants.'" *Id*. (*citing Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir.2003) (*citing City of Canton, Ohio*, 489 U.S. 378, 389-392)); *see also Erwin*, 872 F.2d at 1297-1298 ( "The inadequacy of police training serves as a § 1983 liability basis only if the failure to train amounts to 'deliberate indifference' to the rights of persons with whom the police deal.").

Normally, a single incident is generally not enough to establish a failure to train. *City of Canton*, 489 U.S. at 390-391; *see also Novack v. County of Wood*, 226 F.3d at 531 ("[A] single instance of allegedly unconstitutional conduct does not demonstrate a municipality's deliberate indifference to the constitutional rights of its inhabitants."). This legal proposition stands as a consequence of the need to show that the deficiency in training, as it relates to the facts here, actually caused the jail medical staff's indifference to Miller's dental needs. *City of Canton*, 489 U.S. at 391.

In contrast to what the law requires him to show, Miller offers nothing about the training he believes was deficient, and indeed, as far as can be determined, the alleged failure to meet his medical needs was nothing more than an isolated incident. *City of Canton*, 489 U.S. at 391 (noting that there can be no municipal liability where "an otherwise sound program has

occasionally been negligently administered"). Such occasional mistakes by municipal personnel are not sufficient to establish municipal liability. (*Id.*)

Tellingly, the error here is illustrated by the fact that once Thornton checked her records, she immediately followed jail policy, rectified the situation, and obtained dental treatment for Miller. If Thornton had followed the jail's policy at the outset, it is likely that Miller would have had the impacted wisdom tooth extracted in mid-August, instead of early October. Although regrettable, such isolated acts do not give rise to municipal liability. (*Id.*)

In sum, because Miller has failed to show a basis for a municipal capacity claim, Hart, in his official capacity, is entitled to judgment as a matter of law.

## V. CONCLUSION

For the above reasons, Plaintiff Miller's request to amend his Complaint is DENIED and Defendant Hart's Motion for Summary Judgment (Docket #64) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED.

Enter for this 18th day of November, 2009.

                                              /S/ Roger B. Cosbey
                                              Roger B. Cosbey,
                                              United States Magistrate Judge